Thomas T. KOBIL, and George
F. Kobil

v.

Delbert E. FORSBERG et al.

Civ. A. No. 72–561.

United States District Court,
W. D. Pennsylvania.

Feb. 24, 1975.

Gilbert E. Morcroft, Pittsburgh, Pa., for plaintiffs.

William B. McConnell, Sharon, Pa., for defendant Cohen.

## MEMORANDUM AND ORDER GRANTING DEFENDANT COHEN'S MOTION FOR SUMMARY JUDGMENT

KNOX, District Judge.

Plaintiffs, Thomas Kobil and George Kobil, brought this securities action against Bio-Med Computer Services, Inc. (formerly National Pollution and Computer Corporation), the brokerage house of Moore, Leonard & Lynch, Inc. and several individual defendants. The plaintiffs claim that the defendants are liable for alleged violations of the Securities Act of 1933, 15 U.S.C. § 77a et seq., stemming from the issuance by National Pollution and Computer Corporation of 32,000 shares of its common stock to the plaintiffs and from a subsequent rescission offer by Bio-Med Computer Services, Inc., the issuer's successor corporation. Jurisdiction is based on 15 U.S.C. § 77v.

Individual defendant Donald Cohen now moves this court for summary judgment against the plaintiffs pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] The court must grant defendant Cohen's motion for summary judgment because there are no genuine issues of material fact, and Cohen is entitled to a judgment as a matter of law for reasons stated below.

Plaintiffs' complaint, as amended, is somewhat confusing as to which sections of the Securities Act of 1933 provide the basis for defendant Cohen's civil liability. A fair reading of the complaint, as amended, indicates that plaintiffs seek to recover under Section 12(1) of the Act, 15 U.S.C. § 77l(1), for Cohen's alleged involvement in the sale of unregistered securities in violation of Section 5 of the Act, 15 U.S.C. § 77e, as well as under Sections 12(2) and 17(a) of the Act, 15 U.S.C. § 77l(2), § 77q(a), for alleged fraud in the issuance of 32,000 shares of National Pollution and Com-

1. Rule 56(c) provides that summary judgment shall be ordered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

puter Corporation common stock and in the subsequent rescission offer by the issuer's successor corporation. There is also some mention in the complaint, as amended, of an alleged violation of the registration provisions of the Pennsylvania Securities Act of 1939, 70 P.S. § 31 et seq., which the court does not treat as a pendent state claim because that Act contains no provision for civil liability.[2] The court understands this alleged violation of Pennsylvania security law to relate to the plaintiffs' claim of fraud through non-disclosure under Sections 12(2) and 17(a) of the Securities Act of 1933. Finally, the plaintiffs have alleged no violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., or SEC Rule 10b-5, 17 CFR 240.10b-5 (1974).

### Facts

The court finds there is no dispute as to the following facts regarding this motion for summary judgment. National Pollution and Computer Corporation, the predecessor corporation to defendant Bio-Med Computer Services, Inc., issued 32,000 shares of its common stock to the plaintiffs for the price of $1.00 per share. These shares were delivered by United States mail to the plaintiffs on or about April 24, 1969 and were not registered as required by Section 5 of the Securities Act of 1933. Likewise, the issuer corporation failed to register as a dealer as required by Section 3 of the Pennsylvania Securities Act of 1939, 70 P.S. § 33, and failed to secure an exemption as provided by Section 2(f)(8) of that Act, 70 P.S. § 32(f)(8), in order to sell its own securities. The plaintiffs are brothers who jointly purchased these shares on an equal basis. George Kobil's only connection with the securities transaction was putting up half of the purchase price. He had no knowledge of the affairs of the issuer corporation, and at all times his brother Thomas Kobil acted as his agent with full authority

regarding acceptances and refusals of all offers. See September 14, 1972 deposition of George Kobil, pp. 4–7. Thomas Kobil, however, played a more active role in the issuer corporation, serving as a director from about November, 1969 to September or October, 1970. See September 14, 1972, deposition of Thomas Kobil, p. 72. In addition, Thomas Kobil stated that he had knowledge in 1969 that the securities had not been registered under the Securities Act of 1933 and that he saw monthly corporate financial statements from between January 31, 1970 and September 30, 1970 as well as the February 28, 1971 statement and 1971 annual statement. See September 14, 1972 deposition of Thomas Kobil, pp. 28–32; Plaintiffs' Answers to Defendant Cohen's Request for Admissions 2(e).

Defendant Cohen is a medical doctor whose services on the Bio-Med Computer Services, Inc. Board of Directors were for the purpose of advising on medical matters concerning the E.K.G.–computer program and ethical procedures of salesmanship to the medical community. See Cohen Affidavit pp. 5, 13. At the time plaintiffs purchased their shares, defendant Cohen was not a stockholder, director or officer in National Pollution and Computer Corporation or its successor, Bio-Med Computer Services, Inc. In fact, the plaintiffs admit that Cohen was unknown to them at the time, did not induce them to purchase their shares, did not participate directly or indirectly in the issuance of the shares, and was not making a market in the stock. Plaintiffs' only claims against defendant Cohen are based on his service as director of Bio-Med Computer Services, Inc. at the time of the corporation's rescission offer in January, 1971. See September 14, 1972 deposition of Thomas Kobil, p. 71.

Pursuant to an Order of the Pennsylvania Securities Commission, Bio-Med Computer Services, Inc. sent a letter

---

2. Unlike the prior law which governs this case, the Pennsylvania Securities Act of 1972, 70 P.S. § 1–101 et seq., in effect since January 1, 1973, contains express provisions for civil liability.

dated January 8, 1971 to all stockholders, including the plaintiffs, offering to repurchase their shares for the same price paid at the time of purchase. For the plaintiffs, this would have amounted to $1.00 per share. The letter informed the stockholders that they could choose to keep their shares, but should notify the corporation in writing on or before January 20, 1971 of their decision either to tender or retain their shares. The plaintiffs did not accept the rescission offer; rather, by letter of January 18, 1971, they extended a counter-offer whereby the corporation either could repurchase their 32,000 shares at $3.00 per share or make a downpayment of $32,000 with the possibility of additional payments or issuance of shares to the plaintiffs in the event the corporation sold shares publicly during the next five-year period. Bio-Med Computer Services, Inc. did not accept the plaintiffs' counter-offer, and the plaintiffs filed this securities action on July 7, 1972.

*Claims Under Sections 5 and 12(1)*

The plaintiffs claim that defendant Cohen is liable under Section 12(1) of the Securities Act of 1933 for aiding and abetting in the issuance of 32,000 shares of unregistered common stock in violation of Section 5 of the Act. Section 12(1) provides the basis for civil liability by stating that any person who offers or sells a security in violation of Section 5 is liable to the person purchasing the security who may sue to recover the consideration paid for the security with interest thereon, less the amount of any income received thereon.

■ The plaintiffs admit that at the time they purchased and received the 32,000 shares of unregistered common stock, defendant Cohen was not a stockholder, director, or officer of the issuer corporation. In fact, Cohen was unknown to them at the time and had nothing to do with the issuance of these shares. The plaintiffs, however, present the somewhat novel contention that Cohen became liable with the other defendants for the issuance of the unregistered stock by engaging in an alleged cover-up

rescission offer. According to the plaintiffs, by acting as a director of Bio-Med Computer Services, Inc. at the time of the January 8, 1971 rescission letter Cohen aided and abetted the original issuance of the shares.

The court finds that whether or not the January 8, 1971 rescission letter was fraudulent, defendant Cohen is not liable to the plaintiffs under Section 12(1) of the Securities Act of 1933. It is clear that any unlawful act under section 5(a) would have occurred at the time the unregistered securities were sold or delivered to the plaintiffs, not at the time the corporation made its rescission offer. As noted by Judge Friendly in Katz v. Amos Treat & Co., 411 F.2d 1046, (2d Cir. 1969), Section 12(1) was not intended to embrace an individual who had nothing to do with the issuance of the unregistered shares. By merely serving as a director at the time of the rescission offer, Cohen could not have aided and abetted in a sale and delivery of unregistered stock which had occurred some twenty-one months earlier.

■ In addition, plaintiffs' claim under Section 12(1) is barred by the applicable statute of limitations. Section 13 of the Securities Act of 1933 provides that if an action is brought to enforce a liability created under Section 12(1) of the Act, such action must be brought within one year after the violation upon which it is based. The undisputed facts show that the 32,000 shares of unregistered stock were delivered to the plaintiffs on or about April 24, 1969. Plaintiff Thomas Kobil admits in his September 14, 1972 deposition that he had knowledge in 1969 that the stock had not been registered in accordance with the Securities Act of 1933. Despite this knowledge, the plaintiffs did not file this present suit until July 7, 1972. The action, therefore, is also barred by the applicable one-year statute of limitations.

*Claims Under Sections 12(2) and 17(a)*

The plaintiffs also claim that defendant Cohen is liable under Sections 12(2) and 17(a) of the Securities Act of 1933

for several reasons related to the January 8, 1971 rescission offer of Bio-Med Computer Services, Inc. At the time of this rescission offer, Cohen was serving as a director of the corporation. The plaintiffs argue that the rescission offer was fraudulent because at the time the offer was made, the corporation did not have sufficient funds to repurchase the outstanding shares and allegedly made the offer only as a subterfuge to secure an exemption as a dealer from the Pennsylvania Securities Commission. Section 12(2) provides a basis for civil liability by stating in part that any person who offers or sells a security by use of the mails, by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, is liable to the person purchasing the security who may sue to recover the consideration paid for the security with interest thereon, less the amount of any income received thereon. The statute of limitations contained in Section 13 specifically applies to suits under Section 12(2) by stating that no action shall be maintained to enforce any liability under Section 12(2) unless brought within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence and in no event shall such an action be brought more than three years after the sale.

 Since there is some question whether Section 13 bars plaintiffs' claim under Section 12(2), plaintiffs argue that defendant Cohen is also liable under Section 17(a) which provides:

"It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit upon the purchaser."

Unlike Section 12(2), Section 17(a) is not governed by the statute of limitations contained in Section 13. Rather, Section 17(a) is governed by the analogous state statute of limitations. *See* Kubik v. Goldfield, 479 F.2d 472, 477 (3d Cir.1973); Premier Industries, Inc. v. Delaware Valley Financial Corp., 185 F.Supp. 694, 696 (E.D.Pa.1960).

There appears to be some dispute as to whether section 17(a) provides a basis for civil liability. *See* SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 866–68 (2d Cir. 1968) (Friendly, J. concurring); 3 L. Loss, Securities Regulation 1784–87 (1961); 6 L. Loss, Securities Regulation 3908–15 (1969). The argument against implying civil liability under Section 17(a) is that Congress expressly enacted Section 12 as a basis for civil liability under the Securities Act of 1933 and by permitting a private right of action under Section 17(a), the court would be permitting a plaintiff to circumvent specific limitations on a Section 12(2) action. The court notes, however, that in Dorfman v. First Boston Corp., 336 F. Supp. 1089 (E.D.Pa.1972), Chief Judge Lord considered this argument, but held that the plaintiffs in that case could bring a private action under Section 17(a)(1) and (3). The court finds that even if the plaintiffs may bring their claims under both Sections 12(2) and

17(a) and even if these claims are not barred by the applicable statutes of limitation, defendant Cohen is entitled to a judgment as a matter of law.

The plaintiffs argue that the defendants are liable under Section 12(2) and 17(a) for wilfully and with knowledge of the facts omitting to inform the plaintiffs, at the time of the purchase and delivery of the 32,000 shares of common stock, that the issuer corporation had failed to comply with the registration requirements of both the Securities Act of 1933 and the Pennsylvania Securities Act of 1939. The plaintiffs admit that at the time of the sale and delivery, defendant Cohen was unknown to them and made no fraudulent representations concerning the shares. The plaintiffs, however, assert that as a director of Bio-Med Computer Services, Inc. at the time of the allegedly fraudulent January 8, 1971 rescission letter, Cohen knowingly engaged in a cover-up, thereby becoming an aider and abettor in the original illegalities.

■ The court fails to see how Cohen's participation as a director in the sending of the rescission offer can make him an aider and abettor in the alleged failure to disclose that the 32,000 shares were not registered under the Securities Act of 1933. The January 8, 1971 letter was sent pursuant to an Order of the Pennsylvania Securities Commission in an attempt to cure any illegality under the Pennsylvania Securities Act of 1939 stemming from the issuance of the shares. Whether or not the rescission offer was fraudulent as alleged by the plaintiffs, it had nothing to do with registration requirements of the Securities Act of 1933.

■ The court also fails to see how the rescission offer can make Cohen liable for an alleged failure to disclose that the shares were illegally issued under the Pennsylvania Securities Act of 1939. The plaintiffs claim that the allegedly fraudulent rescission offer was a subterfuge to cure some of the illegalities of the original issue and thereby dispose of some of the defendants' liabilities connected thereto. Rather than serving to aid and abet any prior failure to inform the plaintiffs that their shares were not issued in compliance with the Pennsylvania Securities Act of 1939, the January 8, 1971 letter put them on notice that the Pennsylvania Securities Commission discovered some irregularity. Defendant Cohen, moreover, could have no liability to the plaintiffs under the applicable state securities law because unlike the present law which became effective on January 1, 1973, the Pennsylvania Securities Act of 1939 has no provision for civil liability.

■ Finally, the plaintiffs argue that defendant Cohen is liable under Sections 12(2) and 17(a) because the January 8, 1971 rescission letter failed to state that the corporation was in no financial position to pay any stockholder his original contribution to the company and that the only real purpose of the rescission offer was, by subterfuge, to improperly secure exemption as a dealer from the Pennsylvania Securities Commission. Unlike plaintiffs' other claims in which they argued that Cohen acted through the rescission offer to aid and abet the cover-up of prior illegalities, the plaintiffs allege that the letter independently provides a basis for recovery under Sections 12(2) and 17(a) because it allegedly omitted material facts. Aside from the question of how the allegedly fraudulent rescission offer harmed the plaintiffs, the key fact in connection with this claim is that the corporation was offering to purchase the 32,000 shares from the plaintiffs by its letter of January 8, 1971. Only purchasers have standing to sue for violations of Section 17(a), and as to this particular claim the plaintiffs were potential sellers not purchasers. *See* Kellman v. ICS, Inc., 447 F.2d 1305, 1308–09 (6th Cir. 1971); In re Penn Central Securities Litigation, 357 F.Supp. 869, 877 (E.D.Pa.1973), *aff'd* 494 F.2d 528 (3d Cir. 1974). Likewise, the language of Section 12(2) grants relief only to the person purchasing a security.

## ORDER

And now, to wit, February 10, 1975, after consideration of the briefs of the parties and arguments by counsel with respect to defendant Cohen's motion for summary judgment, for reasons set forth in the foregoing memorandum,

It is ordered that said motion be and the same hereby is granted and summary judgment is hereby entered in favor of the defendant Donald L. Cohen and against the plaintiffs.