Isadore L. KIRSCHNER, Michael S. Kirschner, Frederick M. Kirschner and Morton Goodman

v.

CABLE/TEL CORP., Cable/Tel Systems Corp., Six Star Cablevision Holding Co., Inc., Cable Promotions, Inc., Six Star Cablevision Construction Co., Inc. (as successor to Micro Constructors, Inc.), Six Star Cablevision Management Corp., Communications Finance Systems, Inc., Six Star Cablevision of Kansas City, Kansas, Inc., Six Star Cablevision of Bonner Springs, Kansas, Inc., Six Star Cablevision of Inglewood, Inc., Stuart C. Harris, Roger H. Maggio, Paul L. Skulsky, Martin E. Hecht, Schekter, Aber, Rishy & Goldstein, P.C. (as successor to Schekter, Aber & Hecht, P.C.), Investors Planning Group, Inc., Tom Kaye, Arnold H. Bruck.

Civ. A. No. 83–1487.

United States District Court, E.D. Pennsylvania.

Nov. 14, 1983.

John F. Innelli, Daniel E. Bacine, Leonard Barrack, Philadelphia, Pa., for plaintiffs.

Louis W. Fryman, Jeffrey B. Albert, Philadelphia, Pa., for Cable/Tel Corp., Cable/Tel Systems Corp., Six Star Cablevision Holding Co., Inc., Cable Promotions, Inc., Six Star Cablevision Const. Co., Inc. (as successor to Micro Constructors, Inc.), Six Star Cablevision Management Corp., Communications Finance Systems, Inc., Six Star Cablevision of Bonner Springs, Kansas, Inc., Six Star Cablevision of Kansas City, Kansas, Inc., Six Star Cablevision of Inglewood, Inc., Harris, Maggio & Skulsky.

Richard Asche, Lawrence J. Fox, Philadelphia, Pa., for Martin E. Hecht.

John W. Frazier, IV, Philadelphia, Pa., for Schekter, Aber, Rishy & Goldstein, P.C.

David L. Braverman, Philadelphia, Pa., for Investors Planning Group, Inc., Kaye & Bruck.

Graeme W. Bush, Harrison J. Cohen, Washington, D.C., for Roger H. Maggio.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

This case involves allegations of common law fraud, breach of contract, violation of section 10(b) of the Securities Exchange Act of 1934, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").[1] Presently before the Court

---

1. The complaint also contains an allegation of professional liability. However, since the de-

is a motion to dismiss on behalf of thirteen of eighteen defendants.[2] It is the contention of the moving defendants that the common law fraud claim (count II), the section 10(b) claim (count IV), and the RICO claims (count V), are time barred and allege fraud with insufficient particularity; the RICO claim fails to state a claim upon which relief can be granted; and the breach of contract claim fails to adequately set forth a statement of the claim. Defendants' motion to dismiss is granted in part and denied in part and plaintiffs are given leave to amend the complaint in accordance with the Court's Order.

FACTS

In or about December 1977 and December 1978, plaintiffs purchased investment interests in a business enterprise consisting of ten companies (Cable/Tel companies). The companies are in the business of providing subscribing households with television signals from networks. In return for their investments, plaintiffs and other investors were to receive an ownership interest in a cable television (CATV) system constructed by the Cable/Tel companies, municipal franchise rights, and all services necessary for the operation, management, promotion and maintenance of the investor's portion of the CATV system. The Cable/Tel companies are, directly or indirectly, commonly owned and controlled by individual defendants Harris, Maggio and Skulsky. In their complaint plaintiffs allege that in connection with the sale of the investment interests defendants made a number of fraudulent representations. Among these representations, which now form the bases of all plaintiffs' claims, were ones regarding the use of plaintiffs' investment monies, the cost of construction of the CATV systems, and potential tax benefits and profits. Plaintiffs also allege that defendants made misrepresentations as to the issuance of appraisal and comple-

tion certificates for systems not then in existence and as to the ownership of franchises and restrictions imposed on the franchises by municipal authorities. Defendants have raised a number of defenses to plaintiffs' claims. These will be addressed in the order set forth by defendants.

DISCUSSION

I. *Statute of Limitations*

A. *Common Law Fraud Claim*

Defendants contend that plaintiffs' common law fraud claim, based on the alleged fraudulent misrepresentations, is barred by the two year Pennsylvania statute of limitations which covers an action for taking, detaining or injuring personal property. 42 Pa.Cons.Stat.Ann. § 5524(3) (Purdon 1981). Plaintiffs contend that the applicable limitation statute for common law fraud is the six year residual statute. 42 Pa.Cons.Stat. Ann. § 5527(6) (Purdon 1981).

■ Whether the Court accepts the six year or two year statute as being the appropriate one, plaintiffs' common law fraud claim is not untimely. For purposes of a motion to dismiss, the allegations of a complaint must be taken as true. *Rogin v. Bensalem Township*, 616 F.2d 680 (3d Cir. 1980). Plaintiffs have alleged that they could not have known of any facts which might have led, through the exercise of due diligence, to the discovery of any fraud committed by defendants, "prior to 1982." Since a cause of action for fraud does not accrue until a plaintiff knows of or has reason to know of or investigate the fraud, the earliest the cause of action for common law fraud could have accrued would be January 1, 1982. *See Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946); *Gee v. CBS, Inc.*, 471 F.Supp. 600, 622–23 (E.D.Pa.1979), *aff'd* 612 F.2d 572 (3d Cir.1979). Applying either the two year or six year limitation to that date, plaintiffs' claim cannot be untimely,

fendant against whom that claim is directed is not a party to the present motion to dismiss, there is no need to consider that claim.

**2.** The motion to dismiss is submitted on behalf of individual defendants Stuart C. Harris, Roger H. Maggio, and Paul L. Skulsky, and on behalf of all corporate defendants other than Schekter, Aber, Rishty & Goldstein, P.C., and Investors Planning Group, Inc. (hereinafter referred to as the "moving defendants").

plaintiffs having filed their complaint on March 29, 1983.[3]

## B. *Federal Securities Claim*

Plaintiffs have alleged that defendants' fraudulent activities in conjunction with the sale of the investment interests constitute a violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240, 10b–5, promulgated thereunder.

Since there is no federal statute expressly providing a period of limitation for private actions based on section 10(b), the Court must choose the most analogous state law and apply the statute of limitation appropriate for that state law. *Biggans v. Bache Halsey Stuart Shields*, 638 F.2d 605 (3d Cir.1980); *Roberts v. Magnetic Metals Co.*, 611 F.2d 450 (3d Cir.1979). The Pennsylvania law most analogous to section 10(b) is the antifraud section of the Pennsylvania Securities Act relating to the purchase and sale of securities. Pa.Stat. Ann. tit. 70 § 1–401 (Purdon Supp.1982).[4] Under section 401 of the Pennsylvania Securities Act, in conjunction with section 501(a) of that Act,[5] and under section 10(b) of the Securities Exchange Act of 1934, a defrauded buyer may sue the seller of the securities. *Ernst and Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *see Biggans, supra,* 638 F.2d at 610. In view of the similarity between the federal and state statutes, the Court will apply to the federal claim under section 10(b) the limitation period which governs an action brought by a defrauded buyer under the Pennsylvania Securities Act.

Section 504(a) of the Pennsylvania Securities Act provides that such an action is barred unless it is brought before the expiration of three years after the act or transaction constituting the violation or the expiration of one year after the plaintiff receives notice or upon the exercise of reasonable diligence could have known of the facts constituting the violation, whichever

---

**3.** Although plaintiffs have failed to specify the exact date that they knew or could have known of the fraud as they are required to do by this Court's decision in *Kroungold v. Triester*, 407 F.Supp. 414, 419 (E.D.Pa.1975), this defect should be corrected by plaintiffs in an amendment to the complaint which is required for purposes of determining whether the federal securities claim is untimely. *See* section I.B. In the event that plaintiffs fail to adequately amend the complaint within the allotted time so that it does not specifically state when plaintiffs knew or could have known of the alleged fraud, the common law fraud claim will be dismissed upon motion of the defendants. Additionally, failure to adequately amend the complaint so as to specifically state when plaintiffs knew or could have known of the alleged fraud will result in dismissal, upon motion of the defendants, of plaintiffs' federal securities claim and RICO claims since these claims are also based on the alleged fraudulent conduct.

**4.** Section 401 provides:
It is unlawful for any person, in connection with the offer, sale or purchase of any security in this State, directly or indirectly:
(a) To employ any device, scheme or artifice to defraud;
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.
Section 10(b) provides:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

. . . . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

**5.** Section 501(a) of the Pennsylvania Securities Act provides:
Any person who ... offers or sells a security in violation of sections 401, 403, 404 or otherwise by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading ... shall be liable to the person purchasing the security from him....
Pa.Stat.Ann. tit. 70 § 1–501(a) (Purdon Supp. 1982).

shall first expire. Pa.Stat.Ann. tit. 70 § 1–504(a) (Purdon Supp.1982). Thus, a plaintiff in Pennsylvania has, at most, three years from the date of the transaction within which to file suit. Strict application of this limitation period to plaintiffs' section 10(b) claim would bar the action as untimely, since plaintiffs allege that the sale of the investment interests occurred in or about December 1977 and 1978 (Complaint, para. 7). Nonetheless, further analysis is required because, while it is true that state law provides the limitation period, determination of when the period commences to run is a matter of federal law. *E.g., Hudak v. Economic Research Analysts, Inc.,* 499 F.2d 996 (5th Cir.1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975). Under the federal equitable tolling doctrine the limitation period does not begin to run until plaintiffs knew or could have known of the alleged fraud. *See e.g., Cook v. Avien, Inc.,* 573 F.2d 685 (1st Cir.1978). Although the Pennsylvania statute has its own one year tolling provision, the better reasoning would suggest that such a tolling provision cannot preclude application of the federal equitable tolling doctrine to the fixed limitation period set out in the state statute. *See United California Bank v. Salik,* 481 F.2d 1012, 1015 (9th Cir.1973), *cert. denied,* 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973); *see also Biggans, supra,* 638 F.2d at 607, n. 3. Contrary reasoning would create the possibility of persons in plaintiffs' position being precluded from suing for the fraudulent purchase or sale of securities if that person does not discover the fraud until the fourth year after the transaction. Such preclusion from suit would be at odds with the purpose of the equitable tolling doctrine which seeks to avoid the harsh result occurring when a fixed limitation period expires during concealment of a fraud. Accordingly, the Court determines that in borrowing the limitation provisions of the Pennsylvania Securities Act it will simultaneously utilize the federal equitable tolling doctrine.[6]

▮▮▮ Having reached this conclusion, plaintiffs' securities fraud action is not untimely if the suit was filed within one year of the date upon which, with the exercise of reasonable diligence, plaintiffs could have known or discovered the facts constituting the violation. Plaintiffs allege that they could not have discovered any fraud "before 1982." Accepting this as true and noting that plaintiffs' complaint was filed on March 29, 1983, plaintiffs have left unaccounted for the period between January 1, 1982 and March 29, 1982. If during that period plaintiffs knew or could have known of the fraud, their claim would be untimely. Due to plaintiffs' omission, defendants' motion to dismiss the securities claim as time barred cannot be intelligently determined. The motion will therefore be denied without prejudice and plaintiffs will be given leave to amend their complaint to include the information which is necessary for this Court to determine whether plaintiffs' claim is barred by the one year limitation period. *See Kroungold v. Triester,* 407 F.Supp. 414, 419 (E.D.Pa.1975). Failure to strictly comply with the leave to amend will result in dismissal of the securities fraud claim on defendants' motion.[7]

## C. *RICO Claim*

▮▮▮ Defendants next assert that plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* (Supp. 1982), are barred by the applicable statute

---

6. Although both parties agree that section 504(a) is the appropriate statute of limitations, plaintiffs suggest that the Court wait to apply the statute since the identity of the "sellers" of the securities is, at present, unclear. However, since at least one of the defendants must have been a "seller," it is appropriate to apply the limitation period at this time.

7. Defendants have suggested that if the federal securities claim accrued in New Jersey rather than in Pennsylvania, the action would be barred by the New Jersey blue sky limitation requiring suit be brought within two years after the contract of sale. N.J.Stat.Ann. § 49:3–71(e) (West 1970). However, this statute would also be subject to the federal tolling doctrine, as set forth above, making plaintiffs' suit timely.

of limitations. Since RICO does not contain its own limitation period, federal courts are to look to the most analogous state cause of action and apply the appropriate limitation period. *D'Iorio v. Adonizio*, 554 F.Supp. 222 (M.D.Pa.1982). Defendants contend, alternatively, that the most analogous Pennsylvania state claim would be one for common law fraud (with a two year limitation); securities fraud; civil penalties or forfeitures; or injuries to property.[8] Plaintiffs agree to the extent that the most analogous state claim is one for common law fraud. However, they contend that Pennsylvania law requires a six year limitation period for such actions.

The cases cited by the parties have found that a claim for common law fraud is the most analogous state claim to that of a civil claim under RICO. *Eisenberg v. Gagnon*, 564 F.Supp. 1347 (E.D.Pa. 1983); *D'Iorio, supra*, 554 F.Supp. at 232; *State Farm Fire & Casualty Co. v. Estate of Caton*, 540 F.Supp. 673 (N.D.Ind.1982). This Court agrees that when, as here, a RICO claim is based on allegations of wire, mail and securities fraud, the most analogous state claim is one for common law fraud, since both claims depend upon the existence of a scheme or artifice to defraud. In view of the equitable tolling doctrine, however, the Court need not decide whether the two year statute or the six year statute is applicable. In either event, plaintiffs' RICO claim is not untimely. As stated previously, although this Court is required to look to the appropriate state statute of limitations, a cause of action under a federal statute based on allegations of fraud, like the RICO claim here, does not accrue until such time as the

fraud has been revealed or should have been revealed by the exercise of due diligence. *See Gee v. C.B.S.*, 471 F.Supp. 600, 622 (E.D.Pa.1979), *aff'd*, 612 F.2d 572 (3d Cir.1979) (referring to *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946)). Accepting as true plaintiffs' allegations that they could not have discovered any fraud "before 1982," the earliest the action could have accrued would be January 1, 1982, making plaintiffs' complaint filed March 29, 1983, timely as to this cause of action irrespective of whether a two year or a six year limitation period is applied.[9]

## II. *Failure to Plead with Particularity*

Defendants next move to dismiss plaintiffs' common law fraud, securities fraud and RICO claims under Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that persons alleging fraud state with particularity the circumstances of the fraud. Plaintiffs' claims, being based on allegations of fraudulent conduct by defendants, are subject to the requirement of Rule 9(b).

### A. *All Claims Based on Fraudulent Activity*

With regard to all claims based on the alleged fraudulent conduct, defendants assert that plaintiffs have failed to adequately identify the circumstances of the purchase of the investment interests, the involvement of individual defendants in the purchase and in the misrepresentations, and the time, place and content of the misrepresentations. While plaintiffs may not have pleaded with the specificity defendants would have liked, the Court deter-

**8.** Defendants allege that if it is determined that the RICO claim accrued in New Jersey, it would be barred by N.J.Stat.Ann. § 2A:14–10(b) (West 1952) which, defendants contend, requires all state claims similar to the RICO claim to be brought within two years of the offense. Even assuming that this two year provision applies, however, it would still be constrained by the equitable tolling doctrine as set forth above. Accordingly, the two years or any other time period should not begin to run until plaintiffs either knew or through the exercise of reasona-

ble diligence could have known of the facts constituting their claim.

**9.** As with the common law fraud and securities claims, plaintiffs will be given leave to amend their complaint to include the information necessary for the Court to determine on what date they either knew or could have known of the fraud. Failure to do so will result in dismissal of plaintiffs' claim for RICO violations. *See* note 3, *supra*.

mines that plaintiffs have satisfied the requirement of Rule 9(b).

Plaintiffs' complaint sets forth, in detail, the alleged misrepresentations upon which plaintiffs' claims are based. Complaint, ¶ 25, 40–53. These misrepresentations were allegedly made in connection with the sale of investment interests in CATV systems which occurred in or about December 1977 and 1978. Complaint, ¶ 22–24. The misrepresentations were allegedly made by defendants and their agents in conversation, correspondence and written sales literature. The involvement of individual defendants directly associated with the offer and sale of the investment interests is pleaded. Complaint, ¶ 22. The relationship which exists among the defendants is also pleaded. Complaint, ¶ 9–18. Accordingly, plaintiffs have delineated the acts and transactions constituting the fraud to adequately apprise defendants of plaintiffs' claims. This is all that is required by Rule 9(b). *See Denny v. Carey,* 72 F.R.D. 574 (E.D.Pa.1976).

### B. *RICO Claims*

In addition to the above defects, defendants contend that the RICO claims have other defects which cause them to fail to comply with the requirement of Rule 9(b). Plaintiffs have alleged that defendants have violated the following provisions of RICO:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in or the activities of which affect, interstate or foreign commerce....

(b) It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

18 U.S.C. § 1962(a)–(d) (Supp.1982). The civil liability provision of RICO is contained in 18 U.S.C. § 1964(c) (Supp.1982). That section provides that:

Any person injured in his business or property by reason of a violation of Section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover three-fold the damages he sustains and the cost of suit, including a reasonable attorney's fee.

### 1) *Section 1962(a) and (b)*

In order to recover under section 1962(a), plaintiffs would have to show that at least one of the defendants received income from a pattern of racketeering activity and used at least some of it, or the proceeds of it, in acquiring, establishing or operating an enterprise engaged in interstate commerce. The complaint, however, despite plaintiffs' assertions, fails to state or suggest that any income received from the sale of the investment interests was used in acquiring, establishing or operating the enterprise.

In order to recover under section 1962(b), plaintiffs would have to show that at least one of the defendants, through a pattern of racketeering activity, acquired or maintained an interest in the enterprise. The complaint fails to assert such activity. On the contrary, the complaint suggests that plaintiffs were the ones who acquired interests in the enterprise. The complaint also lacks any allegation that defendants main-

tained an interest in the enterprise through a pattern of racketeering activity. Accordingly, plaintiffs having failed to adequately plead the necessary elements of a section 1962(a) and (b) violation, these RICO claims will be dismissed.[10] Leave to amend, however, will be granted to allow plaintiffs the opportunity to properly state their claims assuming such exist.

### 2) *Section 1962(c)*

With regard to the RICO claim under section 1962(c), five elements need be shown. They are:

(1) existence of an enterprise; (2) that the enterprise affected interstate commerce; (3) that the defendant was employed by or associated with the enterprise; (4) that he participated, either directly or indirectly, in the conduct of the affairs of the enterprise; *and* (5) that he participated through a pattern of racketeering activity, i.e., through the commission of at least two racketeering acts.

*United States v. Kopituk*, 690 F.2d 1289, 1323 (11th Cir.1982) (criminal proceeding); *Eaby v. Richmond*, 561 F.Supp. 131, 134 (E.D.Pa.1983); *Kranzdorf v. Green*, Civil Action No. 83–566, (E.D.Pa. July 28, 1983).

### (1) *Existence of an Enterprise*

■ The complaint meets this requirement by alleging that the individual plaintiffs invested in a business enterprise which consisted of ten Cable/Tel companies. Complaint, ¶ 9. The companies being capable of being "persons," as defined at 18 U.S.C. § 1961(3), plaintiffs have shown the existence of a group of persons associated together for a common purpose of engaging in a course of conduct. *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981).

### (2) *Effect on Interstate Commerce*

Plaintiffs have alleged the use of mail and wire communications by defendants in furtherance of their fraudulent activity. This is sufficient to satisfy this requirement.

### (3) & (4) *Association with Enterprise/Participation in it*

Plaintiffs have alleged the individual moving defendants and Investors Planning Group, Inc. controlled the actions of, or were associated with the Cable/Tel companies. Such allegations meet the third and fourth requirements.

■ The moving defendants contend, however, that regardless of how the Court rules on the other defenses to the RICO claim under 1962(c), the claim under that section must be dismissed as against all defendants named in the complaint other than the individuals Harris, Maggio and Skulsky and Investors Planning Group, Inc. The basis for this position is that only these individual defendants and Investors Planning Group, Inc. are alleged to have been employed by, or associated with, the enterprise and that section 1962(c) only reaches those employed by or associated with the enterprise. Since only Harris, Maggio, Skulsky and the ten cable companies are partners to the present motion, the Court only addresses this defense as it pertains to these defendants. The Court agrees that to the extent that the ten cable companies constitute the enterprise they cannot be liable under section 1962(c) since they cannot be both the enterprise and persons associated with the enterprise simultaneously. *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *Yancoski v. E.F. Hutton*, 581 F.Supp. 88 at 97 (E.D.Pa.1983). Accordingly, any claim against the defendant cable companies based on section 1962(c) is dismissed.

---

**10.** Although defendants have moved to dismiss the section 1962(a) and (b) claims pursuant to Fed.R.Civ.P. 9(b), the dismissal, with leave to amend, is not based on a failure to plead fraud with particularity but rather on the failure to allege the elements necessary to establish violations of sections 1962(a) and (b).

#### (5) *Participation in a Pattern of Racketeering Activity*

 Plaintiffs allege that defendants repeatedly made fraudulent statements concerning plaintiffs' investments. Plaintiffs contend that this fraudulent activity was indicative of a scheme to defraud plaintiffs, which scheme was furthered by defendants, in part, by repeated mail and wire fraud. Such allegations, for purposes of this motion, meet the requirement that defendants participated in the enterprise through a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5) (Supp. 1982). *See Kranzdorf*, Civil Action No. 83–566 (E.D.Pa. July 28, 1983). Accordingly, plaintiffs have adequately pleaded a violation of section 1962(c).

#### 3) *Section 1962(d)*

 Plaintiffs' section 1962(d) conspiracy claim is based on the allegation that "... defendants conspired to conduct Cable/Tel companies through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(a), (b), (c) and (d)." In alleging a civil RICO conspiracy it is necessary to plead fraudulent conspiracy with enough specificity to inform defendants of the facts forming the basis of the conspiracy charge. *Van Schaick v. Church of Scientology of California, Inc.*, 535 F.Supp. 1125, 1141 (D.Mass.1982). Reading the complaint as a whole, the Court determines that, for purposes of this motion, plaintiffs have met that requirement. Plaintiffs have alleged sufficient facts to show that each defendant charged with a RICO violation manifested an agreement to participate in the affairs of the enterprise through the commission of two or more predicate acts. The allegations are adequate to put defendants on notice of the factual claims against which they will have to defend. *See Eaby*, 561 F.Supp. 131, 137 (E.D.Pa.1983).

### III. *Failure to State a RICO Claim*

 Defendants next move to dismiss plaintiffs' RICO claims based on plaintiffs' failure to plead the existence of a "racketeering enterprise injury" as allegedly required by the language of section 1964(c). *See Landmark Savings & Loan v. Loeb Rhoads, Hornblower & Co.*, 527 F.Supp. 206 (E.D.Mich.1981). The argument advanced by defendants, which suggests that plaintiffs must be injured because of a certain relationship between the fraud and the enterprise and not merely injured by the predicate acts, has been advanced by other defendants in this district. Uniformly, the courts have refuted the argument as contrary both to the plain meaning of the statute and to Congressional intent. *Yancoski v. E.F. Hutton & Co., Inc.*, Civil Action No. 82–4743, —— F.Supp. —— (E.D.Pa. September 23, 1983); *Eisenberg v. Gagnon*, 564 F.Supp. 1347 (E.D.Pa.1983); *Kimmel v. Peterson*, 565 F.Supp. 476 (E.D.Pa.1983). The requirement of "injury by reason of violation of section 1962" should be read as simply requiring that the plaintiff was injured by at least two acts of racketeering activity. *Yancoski*, at —— – ——. The allegations of the present complaint meet this requirement.

### IV. *Failure to Adequately Plead Contract Breach*

 Defendants have moved to dismiss, under Rule 8(a) of the Federal Rules of Civil Procedure, the count of plaintiffs' complaint which alleges breach of contract. Rule 8(a) requires that a pleading seeking relief set forth a short and plain statement of the claim showing that the pleader is entitled to relief. The breach of contract count provides:

> The allegations of paragraphs 1 through 54 hereof are realleged and incorporated herein by reference.
> The acts, practices and conduct of defendants alleged herein constitute breaches by defendants of contracts entered into by them with plaintiffs or with third parties for the benefit of plaintiffs.

Complaint, ¶¶ 55, 56. Defendants contend that plaintiffs have failed to comply with Rule 8(a) by failing to adequately plead the terms of the contract, the parties to the

contract, the circumstances leading to breach of the contract, or the existence of third party contracts entered into by defendants for plaintiffs' benefit. The Court agrees, in part.

By reference, plaintiffs allege that in return for their investments in CATV systems, which were owned and controlled by named defendants, it was represented to them that they received interests consisting of contracts which provided them with various rights and entitlements which are set forth in the complaint. Complaint, ¶¶ 7, 24, 25. The plaintiffs then allege that due to the fraudulent conduct also set forth in the complaint, defendants have breached the contract. However, the Court has been unable to determine whether the individual defendants or corporate defendants or both are parties to the contract. Additionally, plaintiffs have failed to adequately show the existence of any third party contracts entered into by defendants for plaintiffs benefit. Accordingly, plaintiffs will be granted leave to amend their complaint to include specific references as to the parties to the contracts and what third party contracts, if any, existed for plaintiffs' benefit.

V. *Conclusion*

Upon consideration of all the arguments advanced by the moving defendants in support of their motion to dismiss, the motion is granted with regard to dismissal of the RICO section 1962(c) claim against the ten cable companies and is denied in all other respects. Plaintiffs will also be granted leave to amend their complaint in order to comply with the requirements set forth in this Memorandum, such amendment to be filed within twenty days of the date of the Court's Order.

An appropriate Order will be entered.